1   TOMIO B. NARITA (SBN 156576)
    tnarita@snllp.com
2   ARVIN C. LUGAY (SBN 242599)
    alugay@snllp.com
3   SIMMONDS & NARITA LLP
    44 Montgomery Street, Suite 3010
4   San Francisco, CA 94104-4816
    Telephone: (415) 283-1000
5   Facsimile:   (415) 352-2625

6
7   Attorneys for Defendant
    Hunt & Henriques

8

9                 UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                     SAN JOSE DIVISION

12  RAYMOND J. SMITH,              )   CASE NO.: 5:12-cv-04150-HRL
                                   )
13             Plaintiff,          )
                                   )
14      vs.                        )   **NOTICE OF MOTION AND
                                   )   MOTION FOR SUMMARY
15  HUNT & HENRIQUES,              )   JUDGMENT BY DEFENDANT
                                   )   HUNT & HENRIQUES;
16             Defendant.          )   MEMORANDUM OF POINTS AND
                                   )   AUTHORITIES IN SUPPORT**
17                                 )
                                   )   Date:    November 5, 2013
18                                 )   Time:    10:00 a.m.
                                   )   Crtrm:   2 - 5th Floor
19                                 )
                                   )   The Honorable Howard R. Lloyd
20                                 )
                                   )
21  _____ )

22

23

24

25

26

27

28

1   TO THE COURT, PLAINTIFF AND HIS ATTORNEY OF RECORD:

2          PLEASE TAKE NOTICE that on November 5, 2013 at 10:00 a.m., or as

3   soon thereafter as the matter may be heard in Courtroom 2, on the 5th Floor of this

4   Court, located at 280 South 1st Street, San Jose, California, 95113, the Honorable

5   Howard R. Lloyd presiding, defendant Hunt & Henriques ("H&H") will and

6   hereby does move this Court for an Order, pursuant to Rule 56 of the Federal

7   Rules of Civil Procedure, granting summary judgment in favor of H&H on all

8   claims.

9          This motion is made on the grounds that there is no competent, admissible

10  evidence showing that H&H engaged in any conduct in violation of the California

11  Rosenthal Fair Debt Collection Practices Act, Civil Code § 1788 *et. seq.* (the

12  "Rosenthal Act"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et.*

13  *seq.* (the "FDCPA"), or that H&H committed any negligence through alleged

14  violations of the Rosenthal Act or the Consumer Legal Remedies Act, Civ. Code §

15  1750, *et seq.* ("CLRA"), and thus there is no genuine issue of material fact for

16  trial.

17         This motion will be based upon this Notice of Motion and Motion, the

18  accompanying Memorandum of Points and Authorities, the Declarations of Arvin

19  C. Lugay and Michael S. Hunt in Support of the Motion, the records on file in this

20  action, and all other evidence or argument the Court may permit at the hearing in

21  this matter.

22

23  DATED: September 6, 2013          SIMMONDS & NARITA LLP
                                      TOMIO B. NARITA
24                                    ARVIN C. LUGAY

25
                                      By:  s/Arvin C. Lugay
26                                         Arvin C. Lugay
                                           Attorneys for Defendant
27                                         Hunt & Henriques

28

# TABLE OF CONTENTS

I.     INTRODUCTION.............................................................. 1

II.    FACTS & ALLEGATIONS OF THE AMENDED COMPLAINT......... 2

     A.    Statement Of Facts ........................................................ 2

     B.    Allegations Of The First Amended Complaint ................... 4

III.   ARGUMENT ................................................................. 6

     A.    Legal Standard Governing Summary Judgment ................. 6

     B.    Smith's State Law Claims Arise Out Of H&H's Protected
          Petitioning Activity ........................................................ 7

          1.    The FDCPA and Rosenthal Act Fail Because Smith Admits
               That He Cannot Establish That The Account Is A Debt Or
               Consumer Debt ....................................................... 8

          2.    H&H Complied With Section 1692g Of The FDCPA ...... 10

          3.    There Is No Evidence To Support A Claim Under Section
               1692e or 1692f Of The FDCPA, Nor Is There Evidence
               Of A Section 1788.13 Violation ....................... 12

     C.    Smith Cannot State A Claim For Negligence ................... 13

          1.    Smith's Claim For Negligence Fails Because He Has No
               Evidence To Support A Violation Of Either The Rosenthal
               Act Or The CLRA ................................................... 13

          2.    Smith's Negligence Claim Is Also Barred By The Litigation
               Privilege ............................................................. 14

IV.   CONCLUSION.............................................................. 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. AFNI, Inc.*
2011 WL 1808779 (E.D. Pa. May 11, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ashcroft v. Iqbal*
556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bloom v. I.C. System, Inc.*
972 F.2d 1067 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Chaudhry v. Gallerizzo*
174 F.3d 394 (4th Cir.1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

*Clark v. Capital Credit & Collection Services, Inc.*
460 F.3d 1162 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Devereaux v. Abbey*
263 F.3d 1070 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Fed. Election Comm'n v. Toledano*
317 F.3d 939 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*Gough v. Bernhardt & Strawser, PA*
2006 WL 1875327 (M.D.N.C. Jun. 30, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hunter v. Washington Mut. Bank*
2012 WL 715270 (E.D. Tenn.  Mar. 01, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Katz v. Main Street Acquisition Corp.*
2012 WL 1439132 (S.D. Cal. Apr. 26, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mahon v. Credit Bureau of Placer Cty, Inc.*
171 F.3d 1197 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Matin v. Fulton, Friedman & Gullace LLP*
2011 WL 5925019 (E.D. Pa. Nov. 14, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Satterfield v. Simon & Schuster, Inc.*
569 F.3d 946 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*State of Calif., on Behalf of Calif. Dept. of Toxic Substances Control v. Campbell*
138 F.3d 772 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Turner v. Cook*
362 F.3d 1219 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATE CASES**

*Jacob B. v. County of Shasta*
40 Cal. 4th 948 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Berry v. American Express Publ'g, Inc.*
147 Cal. App. 4th 224 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Foothill Fed. Credit Union v. Superior Court*
155 Cal. App. 4th 632 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kuehn v. Kuehn*
85 Cal. App. 4th 824 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Ribas v. Clark*
38 Cal. 3d 355 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rubin v. Green*
4 Cal. 4th 1187 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

*Rusheen v. Cohen*
37 Cal. 4th 1048 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Silberg v. Anderson*
50 Cal. 3d 205 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16, 17

*Steiner v. Eikerling*
181 Cal. App. 3d 639 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Tom Jones Enter., Ltd. v. County of Los Angeles*
212 Cal. App.4th 1283 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

**FEDERAL STATUTES**

Fair Debt Collection Practices Act
        15 U.S.C. § 1692, *et seq*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
        § 1692a(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 10,
        § 1692e. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13
        § 1692e(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        § 1692e(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        § 1692e(14) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        § 1692g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
        § 1692g(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
        § 1692g(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
        § 1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

1

## STATE STATUTES

2

California Code of Civil Procedure
   § 47(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
   § 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   § 1770(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rosenthal Act and the Consumer Legal Remedies Act
   § 1750, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6
   § 1788, *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   § 1788.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 12, 13
   § 1788.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   § 1788.2(e)-(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 10

3

4

5

6

7

8

9

## OTHER AUTHORITIES

10

Privacy Act, Penal Code
   § 630, *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. __INTRODUCTION__

Defendant Hunt & Henriques ("H&H") is a law firm that was retained by Merrick Bank Corporation ("Merrick") to recover an unpaid account owed by plaintiff Raymond J. Smith ("Smith").  The firm sent a pre-suit demand letter to Smith informing him that H&H was attempting to collect the account for Merrick. It also explained his right to dispute and seek validation, consistent with the requirements of section 1692g of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA").

Smith sent a letter to H&H requesting validation of the Merrick account. Although not obligated to do so (because Smith's request for validation came more than thirty days after his receipt of H&H's letter), H&H wrote back, providing Smith with an account statement sent to Smith by Merrick that lists the charge off balance on the account.  Despite this, Smith continued to falsely claim that H&H had not properly validated the debt.  Smith then filed this action.

After this case was filed, H&H sent a letter to Smith that included proposed language for the joint case management statement in this action.  Smith subsequently filed his First Amended Complaint (the "FAC"), alleging that the contents of that letter somehow violated the FDCPA and the California Rosenthal Fair Debt Collection Practices Act, Civil Code § 1788 *et. seq*., (the "Rosenthal Act").  The FAC also claims that H&H violated the FDCPA and Rosenthal Act by failing to send Smith a written notice pursuant to section 1692g(a) of the FDCPA and failing to validate his debt consistent with the requirements of section 1692g(b).  In addition, Smith claims that H&H's alleged violations of the Rosenthal Act and the Consumer Legal Remedies Act, Civ. Code § 1750, *et seq*. (the "CLRA") also support a cause of action for negligence.

None of Smith's claims have any merit.  The FDCPA and Rosenthal Act claims fail as a matter of law, because Smith admits in his discovery responses that he can neither state facts nor produce evidence establishing that the Account is a

1   "debt" or "consumer debt" incurred for personal, family, or household purposes.

2       The FDCPA and the Rosenthal Act also fail because the evidence and the

3   allegations of the FAC establish that: (1) H&H's initial demand letter to Smith

4   provided him with the written notice required under section 1692g(a) of the

5   FDCPA; (2) Smith's written dispute and request for validation was untimely under

6   section 1692g(a) and thus failed to trigger H&H's duties under section 1692g(b);

7   (3) H&H provided more than sufficient validation of the Account in its written

8   response to Smith's dispute (although it was not required to do so under section

9   1692g(b)); and (4) Smith has failed to establish which statements, if any, were

10  false or misleading under the FDCPA or Rosenthal Act.

11      Smith's cause of action for negligence fails for two independent reasons.

12  First, the claim fails because there are no facts showing that H&H violated either

13  the Rosenthal Act or the CLRA.  Second, the claim is barred by the California

14  litigation privilege because it is based upon pre-litigation and litigation

15  communications.  Summary judgment on all claims in the FAC is proper.

16  **II.    FACTS & ALLEGATIONS OF THE AMENDED COMPLAINT**

17      **A.    Statement Of Facts**

18      H&H is a collection law firm that collects outstanding financial obligations

19  referred to it by its clients.  *See* Declaration of Michael S. Hunt in Support of

20  Motion for Summary Judgment ("Hunt Decl.") at ¶ 2.   H&H regularly files

21  collection law suits against debtors who fail or refuse to pay the financial

22  obligations the firm has been retained to collect.  *Id*.  In advance of filing any

23  collection lawsuit, however, H&H sends at least one pre-suit demand letter to the

24  debtor in an effort to resolve the claims without litigation.  *Id*.

25      On or about October 12, 2011, Smith's unpaid Merrick account ending with

26  account number 4518 (the "Account") was placed with H&H for collection by

27  Merrick.  Hunt Decl. at ¶ 4.  On October 20, 2011, H&H sent a pre-suit initial

28  demand letter regarding the Account to Smith, addressed to him at P.O. Box 2381,

1   Los Gatos, CA 95031-2381.  *Id*. at ¶ 6, Ex. B.  The letter informed him that
2   Merrick had engaged the firm to collect the outstanding balance, and it included
3   the notice required by section 1692g of the FDCPA.  *Id*.

4       On December 2, 2011, H&H received a letter from Smith dated November
5   30, 2011, requesting validation of the Account, and threatening legal action
6   against the firm.  *Id*. at ¶ 7, Ex. C.  The letter states it was "mailed/postmarked" on
7   December 1, 2011.  *Id*.  H&H then ceased collection communications with Smith
8   regarding the Account until it sent a written validation of the Account.  *Id*. at ¶ 8.

9       On or about February 7, 2012, in response to Smith's letter, H&H sent a
10  validation letter regarding the Account to Smith, addressed to him at P.O. Box
11  2381, Los Gatos, CA 95031-2381.  *Id*. at ¶ 9, Ex. D.  This letter identified the
12  original creditor as Merrick Bank, listed the last four digits of the Account
13  number, and enclosed a copy of the August 15, 2008 charge off statement.  *Id*.
14  The statement reflects that the principal balance was $1,489.30, the finance
15  charges amounted to $673.34, for a total charge off balance of $2,162.64.  *Id*.  The
16  balance in the charge off statement is identical to the outstanding balance sought
17  in the initial demand letter sent by H&H on October 20, 2011.  *Id*. at ¶¶ 6 & 9,
18  Exs.  B & D.

19      On or about March 28, 2012, H&H received a facsimile letter from Smith
20  dated March 27, 2012.  *Id*. at ¶ 11, Ex. E.  Smith stated that he "refused and
21  rejected" the validation provided by the firm.  *Id*.  He requested further validation
22  of the Account, and again threatened legal action against H&H.  *Id*.

23      On August 7, 2012, Smith filed the Complaint in this action.  *See* Docket 1.
24  On October 8, 2012, H&H sent a letter to Smith to discuss the preparation of the
25  parties' joint case management statement that was due on October 16, 2012.  *Id*. at
26  ¶ 12, Ex. F. In the letter, H&H proposed the following language setting forth the
27  firm's position for inclusion in the joint case management statement:

28

> We dispute that your request for validation triggered a duty to validate; we dispute that there is a 30-day deadline to validate; we dispute that a debtor has a right to make any specific inquiries or request any particular documents when requesting validation; we dispute that a debt collector is required to provide any documentation when validating a debt; and we dispute that a debt collector does not have a permissible purpose to obtain a credit report.

*Id*.

On August 8, 2013, H&H served Smith with its first set of Interrogatories ("ROGs"), Requests for Production of Documents ("RFPDs"), and Requests for Admission ("RFAs").  *See* Declaration of Arvin C. Lugay in Support of Motion for Summary Judgment ("Lugay Decl.") at ¶ 2, Exs. A-C.  On August 22, 2013, Smith served his responses to H&H's written discovery requests.  *Id*. at ¶ 3, Exs. D-F.  Smith admits that he cannot state any facts or provide any documentary evidence establishing that he is not responsible for the balance on the Account or that H&H violated the FDCPA or Rosenthal Act.  *See* Lugay Decl., Exs. A and D at ROG No. 1; Exs. C and F at RFPDs Nos. 9 and 10.  Smith denies that he has "actual knowledge regarding the purpose of the purchases and transactions that comprise the balance incurred on the [Account]."  *Id*., Exs. B and E at RFA No. 6. He could not state any facts in support of his allegations that the unpaid balance on the Account is a "debt"as that term is defined by 15 U.S.C. § 1692a(5) and a "consumer debt" as that term is defined by Cal. Civ. Code § 1788.2(f).  *Id*., Exs. A and D at ROG No. 3.  Smith also admits that he has no documents "reflecting the nature of the transactions that comprise the unpaid balance on the [Account]" or supporting his allegation that the Account is a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and a "consumer debt" as that term is defined by Cal. Civ. Code § 1788.2(f).  *Id*., Exs. A and D at ROG No. 3; Exs. C and F at RFPDs Nos. 6 and 8.

## B. Allegations Of The First Amended Complaint

On July 9, 2013, Smith filed his First Amended Complaint (the "FAC"). *See* Docket 34.  The FAC alleges that H&H violated the FDCPA and the

1  Rosenthal Act and committed negligence by failing to comply with the Rosenthal

2  Act and the Consumer Legal Remedies Act, Civ. Code § 1750, *et seq*. ("CLRA").

3     The FAC alleges that in October 2011, H&H sent him "a letter notifying

4  [Smith] that [H&H] is a debt collector, attempting to collect on a debt allegedly

5  owed to Merrick Bank." *See* FAC at ¶ 10.[1]

6     Smith alleges that "on or around November 30, 2011," he sent a letter

7  requesting validation of the Account. *Id*. at ¶ 12. Significantly, Smith does not

8  allege, nor could he, that he notified H&H of his dispute in writing within thirty

9  (30) days of his receipt of the October 20, 2011 from H&H, as required by section

10  1692g(b) of the FDCPA. *Id*. at ¶ 11-12; Hunt Decl. at ¶ 6, Ex B.

11     Smith also claims that H&H "failed to validate the debt within thirty (30)

12  days as required by 15 U.S.C. § 1692(g) [*sic*]," despite the fact that section 1692g

13  does not require a collector to provide validation within thirty days. *See id*. at ¶¶

14  12 and13; 15 U.S.C. § 1692g. Section 1692g only requires that a collector cease

15  collection of a debt that is timely disputed under section 1692g(a) until it provides

16  the consumer with verification of the debt. *See* 15 U.S.C. § 1692g(b).

17     Smith alleges that "on or about January 2011," he had a telephone

18  conversation with an attorney from H&H who informed him that his request for

19  validation "would not hold up in court, causing [Smith] to believe that H&H

20  intended to pursue legal action." *Id*. at ¶ 14. Smith claims that the attorney told

21  Smith he "would be responsible for charges in addition to the amount allegedly

22  owed." *Id*.

23     Smith admits that on February 7, 2012, H&H sent him a letter attaching the

24  charge off statement for the Account. *Id*. at ¶ 15. He claims the letter did not meet

25

26     [1] The FAC also includes a conflicting allegation, *i.e*., that the October 2011
27  letter is "unclear" as to whether H&H was the current creditor for the Account, if it
   was a third party debt collector for the Account, or if it represented Merrick as its
28  client. *Id*. at ¶ 11.

1   the requirements for validation of a debt under section 1692g.  *Id*. ¶¶ 15-16.  He

2   also alleges that the February 7, 2012, validation letter was untimely because it

3   was dated 67 days after his November 30, 2011 request for validation.  *Id*. at ¶ 16.

4        The FAC alleges that on October 8, 2012, H&H sent Smith "a response to

5   [his] complaint," that was "in violation of statutory practices . . . for verifying

6   debt," because it contained statements disputing his claims.  *Id*. at ¶ 19; Hunt Decl.

7   at ¶ 12, Ex F.  The language quoted from the alleged "response" to his complaint

8   is actually a quote from H&H's October 8, 2012 letter regarding the firm's

9   position with respect to the joint case management statement for this case.  *Id*.

10       The FAC's First Cause of Action alleges that H&H violated the California

11  Rosenthal Act, sections 1788.13 and 1788.17 (the section 1788.17 violations are

12  based upon alleged violations of sections 1692e(5), 1692e(10), 1692e(14) and

13  1692g(a) of the FDCPA).  *See* FAC at ¶¶ 21-23.  The Second Cause of Action

14  alleges that the facts above also constitute violations of the sections 1692e, 1692f,

15  and 1692g(b) of the FDCPA.  *Id*. at ¶¶ 25-26.  The Third Cause of Action alleges

16  that H&H committed negligence by failing to comply with the Rosenthal Act and

17  the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. ("CLRA").  *Id*.

18  at ¶¶ 28-32.

19  **III.   ARGUMENT**

20       **A.   Legal Standard Governing Summary Judgment**

21       "The court shall grant summary judgment if the movant shows that there is

22  no genuine dispute as to any material fact and the movant is entitled to judgment

23  as a matter of law."  *See* Fed. R. Civ. Proc. 56(a).  As the moving party, Defendant

24  may discharge its burden by "'showing' – that is, pointing out to the district court

25  – that there is an absence of evidence to support the nonmoving party's case."  *See*

26  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *accord Devereaux v. Abbey*,

27  263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex*).

28

To survive this motion for summary judgment, Smith "must present competent evidence that creates a genuine issue of material fact." *See Federal Election Comm'n v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002). The materiality of a fact is determined by the underlying substantive law. *See State of Calif., on Behalf of Calif. Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 782 (9th Cir. 1998). "Summary judgment is appropriate when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 950 (9th Cir. 2009).

## B. Smith's Rosenthal Act and FDCPA Claims Fail As A Matter Of Law

Smith's claims under the Rosenthal Act and the FDCPA fail because he admits that he has no evidence to support an essential element of his claims, i.e., that the charges incurred on the Account were incurred primarily for personal, family or household use. Even if there was evidence that the Account is a "debt" or "consumer debt" Smith's Rosenthal Act and FDCPA claims still fail. Smith principal claim is that H&H allegedly failed to comply with section 1692g of the FDCPA.[2] He says H&H did not provide him notice under section 1692g(a)[3] and

---

[2] Section 1788.17 of California Civil Code incorporates by reference portions of the FDCPA, including, in this instance, section 1692g of the FDCPA. *See* Cal. Civ. Code § 1788.17.

[3]      Section 1692g(a) of the FDCPA states that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –
(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

1   that the firm failed to validate the Account in response to his letter, allegedly in

2   violation of section 1692g(b).  As explained below, H&H complied with both

3   provisions of section 1692g, so these claims must fail.  The remainder of Smith's

4   FDCPA and Rosenthal Act claims are based on alleged violations of sections

5   1692e and 1692f of the FDCPA, as well as section 1788.13 of the Rosenthal Act.

6   These claims are all based upon conclusory allegations, and cannot be supported

7   by admissible evidence.  As a result they fail as a matter of law.

8               **1.**      **The FDCPA and Rosenthal Act Fail Because Smith Admits**

9                      **That He Cannot Establish That The Account Is A Debt Or Consumer Debt**

10  The Rosenthal Act and FDCPA claims fail because Smith has no evidence

11  to support an essential element of his claim; namely, that H&H was seeking to

12  collect a "debt" or "consumer debt" covered by the FDCPA and the Rosenthal Act.

13  Smith admits in his discovery responses that he has no evidence that any part of

14  the alleged outstanding balance for the Account was incurred primarily for

15  personal, family, or household purposes.

16  An essential element of any claim under the Rosenthal Act or FDCPA is

17  establishing that the financial obligation at issue is a "consumer debt" under the

18  Rosenthal Act or a "debt" under the FDCPA.  In order to be considered a

19  "consumer debt" or "debt" under either Act, the financial obligation at issue must

20  be incurred "primarily for personal, family or household purposes."  *See* 15 U.S.C.

21  § 1692a(5) and Cal. Civ. Code  § 1788.2(e)-(f) .

22

23         (4) a statement that if the consumer notifies the debt collector in writing within

24  the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the

25  consumer and a copy of such verification or judgment will be mailed to the

26  consumer by the debt collector; and

27  (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address

28  of the original creditor, if different from the current creditor."

1    The existence of a "consumer debt" under the Rosenthal Act or a "debt"
2    under the FDCPA is something that cannot be presumed.  Proving the existence of
3    a "debt" is a "threshold" issue in every FDCPA action.  *See Turner v. Cook*, 362
4    F.3d 1219, 1226-27 (9th Cir. 2004) ("Because not all obligations to pay are
5    considered debts under the FDCPA, a threshold issue in a suit brought under the
6    Act is whether or not the dispute involves a 'debt' within the meaning of the
7    statute.").   To determine if a "debt" or "consumer debt" was incurred, the relevant
8    focus is on how the debtor used the funds, not on the way that the original lender
9    or subsequent collector treated the debt.  *See Bloom v. I.C. System, Inc.*, 972 F.2d
10   1067, 1068 (9th Cir. 1992) (personal loan from a friend used to start software
11   business not a "debt":  "The [FDCPA] characterizes debts in terms of end uses . . .
12   [n]either the lender's motives nor the fashion in which the loan is memorialized
13   are dispositive of the inquiry").

14       The burden of proving the existence of a "consumer debt" lies squarely with
15   Smith.  *See Hunter v. Washington Mut. Bank*, 2012 WL 715270, *2 (E.D. Tenn.
16   Mar. 01, 2012) ("It is the [FDCPA] plaintiff's burden to show that the obligation at
17   issue was incurred 'primarily for personal, family, or household purposes.'").  If
18   he cannot produce competent evidence of the nature of the unpaid credit card
19   charges made on the account, then he has not shown that either the Rosenthal Act
20   or the FDCPA applies, and summary judgment should be granted for H&H.  *See,
21   e.g., Anderson v. AFNI, Inc.*, 2011 WL 1808779, *14 (E.D. Pa. May 11, 2011)
22   (proof of the existence of a "debt" is an essential element of plaintiff's claim);
23   *Matin v. Fulton, Friedman & Gullace LLP*, 2011 WL 5925019, *4-5 (E.D. Pa.
24   Nov. 14, 2011) (same, following *Anderson*).

25       Smith has already admitted that he cannot meet his burden, because he has
26   no knowledge regarding the purpose of the purchases and transactions that
27   comprise the unpaid balance on the Account.  *See* Lugay Decl., Exs. B and E at
28   RFA No. 6.   He also cannot state any facts or produce any documents in support

1   of his allegations that the Account is a "debt" as that term is defined by 15 U.S.C.

2   § 1692a(5) and a "consumer debt" as that term is defined by Cal. Civ. Code §

3   1788.2(f).  *Id.*, Exs. A and D at ROG No. 3; Ex. C and F at RFPDs Nos. 6 and 8.

4        In short, Smith has absolutely no evidence on the threshold issue of whether

5   the FDCPA or Rosenthal Act apply to the Account.  His FDCPA and Rosenthal

6   Act claims thus fail as a matter of law.

7              **2.    H&H Complied With Section 1692g Of The FDCPA**

8        Even if the FDCPA applied here, Smith's section 1692g claim fails.  The

9   October 20, 2011 letter from H&H to Smith complied with section 1692g(a).  As

10  Smith concedes, it identified Merrick as the creditor to whom the Account was

11  owed.  *See* FAC at ¶ 10. It also contained the following notice, consistent with the

12  requirement of section 1692g(a) of the FDCPA:

13       Federal law gives you 30 days after you receive this letter to dispute the
         validity of the debt or any part of it.  If you do not dispute the validity of the
14       debt, or any part of it, within that period, we will assume that the debt is
         valid.  If you dispute the debt, or any part of it, in writing - by mailing a
15       notice to this firm to that effect on or before the 30th day following the date
         you receive this letter - we will obtain and mail to you proof (verification)
16       of the debt.  And if, within the same period, you request in writing the name
         and address of the original creditor (if different from our client), we will
17       furnish you with that information too.

18  *See* Hunt Decl., Ex. B.  The October 20, 2011, letter was not returned to H&H as

19  undeliverable.  *Id.* at ¶ 6 & 10.

20       Section 1692g(a) of the FDCPA requires that the notice be "sent" to the

21  consumer.  *See Mahon v. Credit Bureau of Placer Cty, Inc.*, 171 F.3d 1197, 1201

22  (9th Cir. 1999) (granting summary judgment for collector even though debtors

23  testified they had no memory of receiving the section 1692g notice).  Under the

24  common law Mailbox Rule, the Court presumes a debtor receives a letter shortly

25  after it is mailed.  *See id.* at 1202.  Applying *Mahon* here, the October 20, 2011,

26  letter was mailed to Smith and was not returned to H&H.  *See* Hunt Decl. at ¶ 10.

27  Therefore, it was presumed received shortly after it was mailed.  *See Mahon*, 171

28  F.3d at 1202.  Smith's allegations refer to information contained in the October 20,

1   2011 letter, confirming that he received it. *See* FAC at ¶¶ 10-11. H&H complied

2   with section 1692g(a) and all of Smith's FDCPA and Rosenthal Act claims based

3   on an alleged violation of that section of the FDCPA must fail.

4   Nor did H&H violate 1692g(b) of the FDCPA.[4] Smith claims the firm did

5   not provide him with proper validation in response to his letter. *See* Hunt Decl. at

6   ¶ 9, Ex. D; FAC at ¶ 12. But Smith did not send a timely request for validation, so

7   H&H's duty to provide validation was never triggered. He had thirty days from

8   the day he received the October 20, 2011, letter to request verification. Under the

9   Mailbox Rule, he is presumed to receive the letter shortly after it was mailed by

10  H&H on October 20, 2011. *See Mahon*, 171 F.3d at 1202. He did not request

11  validation until December 1, 2011, however, which is well outside of the statutory

12  deadline. *See* Hunt Decl., ¶ 7, Ex. C. H&H was under no duty to respond to his

13  request and therefore the section 1692g(b) claim fails as a matter of law.

14  Even if his request for validation had been timely, the section 1692g(b)

15  claim still fails, because H&H properly validated the debt. "At the minimum,

16  'verification of a debt involves nothing more than the debt collector confirming in

17  writing that the amount being demanded is what the creditor is claiming is owed.'"

18  *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1173-74 (9th

19  Cir. 2006) (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir.1999)).

20  When H&H provided Smith an account statement sent by his creditor containing

21  his name and the balance due on the account, this was more than sufficient to

22

23  _____

24  [4] Section 1692g(b) of the FDCPA provides: "If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the

25  debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt,

26  or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a

27  copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b).

28

1   validate the debt.  *See Gough v. Bernhardt & Strawser, PA*, 2006 WL 1875327, \*5

2   (M.D.N.C. Jun. 30, 2006) (following *Chaudhry*, 174 F.3d at 406).

3       Smith also claims that H&H somehow violated section 1692g by failing to

4   respond to his request for validation within thirty days.  This claim has no merit,

5   as section 1692g does not require that validation must be provided within 30 days.

6   *See* 15 U.S.C. § 1692g.  There is no violation of 1692g here, and thus the

7   Rosenthal Act claim fails to the extent it relies upon an alleged 1692g violation.

8           **3.    There Is No Evidence To Support A Claim Under Section
                   1692e or 1692f Of The FDCPA, Nor Is There Evidence Of A
9                  Section 1788.13 Violation**

10      Smith has not even pled a valid claim under sections 1692e or 1692f of the

11  FDCPA, or under section 1788.13 of the Civil Code.[5]  The FAC does not identify

12  what, if anything, H&H wrote or said to him that was either false or misleading in

13  violation of section 1692e.  Nor does the pleading identify any facts indicating that

14  H&H attempted to collect an amount he did not owe, or that it used any "unfair or

15  unconscionable means" to collect the debt, in violation of section 1692f.  The

16  claims under section 1788.13 of the Civil Code are also based solely on

17  conclusory allegations.

18      Smith cannot state a valid cause of action simply by parroting the elements

19  of the statutes.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007);

20  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–679 (2009); *Fed. Election Comm'n v.*

21  *Toledano*, 317 F.3d 939, 950 (9th Cir. 2002).  Smith must allege facts to support

22  the claims, and, in the context of this motion, he must provide admissible evidence

23  to support those facts.  *Id*.  Conclusory allegations that H&H did not provide

24  _____

25      [5] Section 1692e states that "[a] debt collector may not use any false, deceptive,
    or misleading representation or means in connection with the collection of any debt."
26  Section 1692f of the FDCPA states that a collector "may not use unfair or
    unconscionable means to collect or attempt to collect any debt" and provides a list of
27  conduct that violates the provision. Section 1788.13 of the Rosenthal Act prohibits
28  various false representations in connection with the collection of a debt.

1   notice or validation of the debt does not support a claim under sections 1692e and

2   1692f of the FDCPA or section 1788.13 of the Rosenthal Act. *See Katz v. Main*

3   *Street Acquisition Corp.*, 2012 WL 1439132, *3 (S.D. Cal. Apr. 26, 2012)

4   (summary judgment for defendant on section 1692e and 1692f claims; "[m]erely

5   asserting that [the debtor] has not received proof of Defendants' valid ownership

6   of the debt does not establish Defendants ever falsely represented the debt or that

7   their collection[] efforts have been unauthorized.").

8        Smith has had ample opportunity to produce evidence in support of his

9   claims but has failed to do so.  In his discovery responses, Smith admits that he

10  cannot state any facts or provide any documentary evidence establishing that he is

11  not responsible for the balance on the Account or that H&H violated the FDCPA

12  or Rosenthal Act. *See* Lugay Decl., Exs. A and D at ROG No. 1; Exs. C and F at

13  RFPD Nos. 9 and 10.  There is no genuine dispute as to any material fact and all of

14  Smith's Rosenthal Act and FDCPA claims must fail as a matter of law.

15       **C.    Smith Cannot State A Claim For Negligence**

16            **1.    Smith's Claim For Negligence Fails Because He Has No
                    Evidence To Support A Violation Of Either The Rosenthal**
17                  **Act Or The CLRA**

18       Smith's negligence claim has no merit.  The claim is derivative of the

19  alleged FDCPA and Rosenthal Act claims, which fail for the reasons previously

20  discussed.  He also references an alleged violation of the Consumer Legal

21  Remedies Act ("CLRA"), but he has not attempted to state a claim under the

22  CLRA, nor could he support such a claim with admissible evidence.

23       The CLRA only applies to "unfair methods of competition" or "deceptive

24  acts or practices undertaken by any person in a <u>transaction</u> intended to result or

25  which results in the <u>sale or lease of goods or services</u> . . . ."  Cal. Civ. Code

26  §1770(a) (emphasis added).  Because extensions of credit, like the one at issue in

27  this case, do "not qualify as goods or services under the CLRA," Smith cannot

28  state a cause of action under the CLRA. *See Berry v. American Express Publ'g,*

1  *Inc.*, 147 Cal. App. 4th 224, 233 (2007) (holding that the American Express credit

2  card issued to plaintiff by defendant did not constitute a "good" or "service" under

3  the CLRA).

4      The negligence claim fails as a matter of law because Smith has not

5  properly alleged, and cannot support with admissible evidence, any claim under

6  the FDCPA, the Rosenthal Act, or the CLRA.

7      **2.**    **Smith's Negligence Claim Is Also Barred By The Litigation Privilege**

8      Smith's negligence claim is also barred by California Civil Code § 47(b),

9  otherwise known as the California litigation privilege.  Smith's cause of action for

10  negligence is derivative of the pre-litigation and litigation communications at issue

11  in the alleged FDCPA and Rosenthal Act claims.  Because the litigation privilege

12  applies to derivative tort claims such as negligence, the negligence claim is barred

13  as a matter of law.

14      The litigation privilege is a well-established bar against state law claims

15  based on communications made in relation to a court proceeding.  "For well over a

16  century, communications with 'some relation' to judicial proceedings have been

17  absolutely immune from tort liability by the privilege codified as section 47(b)."

18  *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993).[6]  The principal purpose of the

19  privilege is "to afford litigants and witnesses the utmost freedom of access to the

20  courts without fear of being harassed subsequently by derivative tort actions."

21  *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990) (citations omitted).  Thus "the

22  absolute litigation privilege of Civil Code section 47, subdivision (b), bars

23  derivative tort actions and 'applies to all torts other than malicious prosecution,

24  including fraud, negligence and negligent misrepresentation. [Citation.]'" *Kuehn*

25

26      [6]  Section 47(b) of the California Civil Code provides in relevant part as

27  follows: "A privileged publication or broadcast is one made: . . .  (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding

28  authorized by law . . . ." Cal. Civ. Code § 47(b).

*v. Kuehn*, 85 Cal. App. 4th 824, 834 (2000); *see also Tom Jones Enter., Ltd. v. County of Los Angeles*, 212 Cal. App.4th 1283, 1294 (2013) (affirming demurrer to negligence claim based on communication made in connection with writ of execution).  The usual formulation of the elements of the privilege was stated in *Silberg* as follows:

> The privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.

*Silberg*, 50 Cal. 3d  at 212.

Pre-litigation letters or communicative conduct, in addition to pleadings and communications made during litigation, are also privileged and may not form the basis of any claim.  *See, e.g., Silberg*, 50 Cal. 3d at 212 (privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved**.**" (emphasis supplied); *see Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006) (privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards. (citation)"); *Rubin*, 4 Cal. 4th at 1195-96 (privilege covered communications made by attorneys in anticipation of suit, as well as contents of pleading and amended pleadings).

Because the application of the privilege is essential to ensuring the integrity of the judicial process, California courts have given the privilege an expansive reach, using it to bar both statutory and tort causes of action (with the exception of malicious prosecution claims).  *See Silberg,* 50 Cal. 3d at 215-16.[7]  The

---

[7] *See also Jacob B. v. County of Shasta*, 40 Cal. 4th 948 (2007) (constitutional right of privacy claim barred); *Foothill Fed. Credit Union v. Superior Court*, 155 Cal. App. 4th 632, 634-36(2007) (claim for invasion of privacy based on disclosure of personal financial records barred); *Ribas v. Clark*, 38 Cal. 3d 355, 364-65 (1985) (claim for damages arising from alleged violations of Privacy Act, Penal Code §§

1   compelling policy reasons underling the privilege – allowing for zealous advocacy
2   by attorneys, and free access to the courts by litigants and witnesses – have led the
3   California Supreme Court to observe that <u>no</u> claim – whether statutory, common
4   law, or even **constitutional** – can trump the privilege, regardless of the "label"
5   used by the plaintiff. *See Jacob B.*, 40 Cal. 4th at 962 (constitutional right of
6   privacy claim based on letter sent in connection with litigation was barred: the
7   privilege furthers "the vital public policy of affording free access to the courts and
8   facilitating the crucial functions of the finder of fact.") (citations omitted).[8]

9       The negligence claim is based entirely upon the same pre-litigation and
10  litigation communications upon which Smith bases his FDCPA and Rosenthal Act
11  claims. Smith alleges no other facts in support of the claim. Smith's cause of
12  action for negligence therefore cannot escape the absolute bar of the litigation
13  privilege and it fails as a matter of law. *See Tom Jones Enter., Ltd.*, 212 Cal. App.
14  4th at 1294.

15  **IV.   <u>CONCLUSION</u>**

16      For each of the foregoing reasons, H&H respectfully requests that the Court
17  enter an Order granting summary judgment for H&H on all causes of action in the
18  FAC.

19  //

20  //

21

22  ────────────────
    630, *et seq.* barred); *Steiner v. Eikerling*, 181 Cal. App. 3d 639, 642-43 (1986) (claim
23  based on publication of forged will prepared for probate barred).

24      [8] *See also Rusheen*, 37 Cal. 4th at 1064 (privilege encourages attorneys to
25  zealously protect their clients' interests: "It is desirable to create an absolute
    privilege ... not because we desire to protect the shady practitioner, but because we
26  do not want the honest one to have to be concerned with [subsequent derivative]
27  actions . . .") (citations omitted); *Silberg*, 50 Cal. 3d at 215 (rejecting the "interests
    of justice" exception to the privilege: "To effectuate its vital purposes, the litigation
28  privilege is held to be absolute in nature.") (citations omitted).

DATED: September 6, 2013   SIMMONDS & NARITA LLP
            TOMIO B. NARITA
            ARVIN C. LUGAY


         By: s/Arvin C. Lugay
            Arvin C. Lugay
            Attorneys for Defendant
            Hunt & Henriques